IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WALTER C. SMITH, III,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.                                              No. 10-cv-536-DRH

MEMORANDUM AND ORDER

HERNDON, Chief Judge:

## I.   Introduction

Now before this Court is petitioner Walter C. Smith, III's, motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). The government opposes petitioner's motion (Doc. 3). For the following reasons, petitioner's motion for relief pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.[1]

## II.   Background

On September 21, 2006, based on evidence obtained through two separate search warrants executed in 2005 and 2006, a grand jury indicted petitioner with one count of conspiracy to possess with intent to distribute cocaine and cocaine

---

[1] Having closely examined the record before it, the Court concludes petitioner's claims do not warrant an evidentiary hearing. **Error! Main Document Only.**See *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner [has] actual proof of the allegations going beyond mere unsupported assertions"); *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000) (holding a hearing not required where record conclusively demonstrates that a defendant is entitled to no relief on § 2255 motion); *see also* Rules 4(b) and 8(a) of RULES GOVERNING SECTION 2255 PROCEEDINGS.

base, and seven counts of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). (*See United States v. Walter C. Smith, III*, 06-cr-30070-DRH, Doc. 29).

As the validity of the underlying search warrants represents a theme of petitioner's grievances raised at the trial level, on appeal, and again in his instant petition, the Court shall briefly detail the relevant history of their procurement. Police suspected petitioner sold drugs out of 1837 Arkansas Avenue, a pink house in Mulberry Grove, Illinois. Thus, they set up surveillance and controlled buys at the premises. These activities provided the probable cause for the search warrants which eventually led to petitioner's indictment. *United States v. Walter C. Smith, III,* 576 F.3d 762, 763 (7th Cir. 2009), *cert. denied,* 130 S. Ct. 1029, 175 L. Ed. 2d 629, 78 U.S.L.W. 3360 (2009).

Specifically, on January 21, 2005, Inspector David Dunn obtained the first search warrant for 1837 Arkansas Avenue. *Id.* at 763. Dunn's search warrant affidavit detailed two covert drug buys conducted with Agent Michael McCartney. The first involved a confidential informant who entered the residence next to 1837 Arkansas Avenue to purchase cocaine from Edith Fletcher. The informant's eavesdropping device enabled Dunn to hear Fletcher say she needed to retrieve the drugs from next door. Dunn then observed Fletcher obtain the drugs from next door. *Id.*

The second drug buy involved Virgil T. Green. Dunn's affidavit stated that Green entered 1837 Arkansas Avenue and purchased cocaine. However, the

transaction actually occurred in the front yard. Concerning this discrepancy, the government explained that the layout of the house made constant surveillance difficult. Thus, the police had to drive around the house in intervals; leaving periods of time where the front of the house was not in view. When Green informed the police he bought drugs from petitioner, the police wrongly assumed the purchase occurred inside the home. *Id.* at 763-64. The execution of the 2005 search warrant resulted in the recovery of 43.5 grams of powder cocaine, 8.4 grams of cocaine base, 187.9 grams of marijuana, surveillance equipment, and a measuring cup containing cocaine reside which bore petitioner's fingerprints. *Id.* at 764.

Dunn obtained a second search warrant for drugs and drug-related materials at 1837 Arkansas Avenue, on May 17, 2006. Once again, Dunn's affidavit contained an error, as it stated three controlled drug buys occurred at the residence in 2005. As detailed above, only two controlled buys had taken place at the residence. The government conceded the mistake, labeling it a "scrivener's error." Execution of this search warrant yielded 16.7 grams of cocaine base, 417.8 grams of marijuana, large sums of money, several firearms, and miscellaneous ammunition. *Id.*

Petitioner filed motions to suppress the fruits of the searches, citing the factual misrepresentations contained in the affidavits (06-cr-30070, Docs. 19, 69). The Court denied his motions, finding petitioner had failed to make the preliminarily showing necessary to obtain a hearing under *Franks v. Delaware*,

438 U.S. 154 (1978) (06-cr-30070, Doc. 82). Thus, petitioner's case proceeded to trial.

On the fourth day of petitioner's trial, another theme of petitioner's grievances arose, as Juror No. 1 asked to be excused. Upon conducting the appropriate inquiry with Juror No. 1, which was thereafter memorialized on the record, this Court replaced Juror No. 1 with an alternate juror. Juror No. 1 related to the Court that he felt he knew too much about the situation and could no longer remain impartial in rendering a verdict. He further stated that he had made only one comment to another juror, stating, "this testimony is hitting close to home or something to that effect." However, Juror No. 1 could not recall to which juror he had commented. Defense counsel moved for a mistrial, voicing concern that there was no way to discern the effect of Juror No. 1's statement. However, as Juror No. 1 could not identify to which juror he spoke, no other jurors lived close to Juror No. 1, and due to the inherently innocuous nature of Juror No. 1's statement, the Court took no further action and proceeded with the case (06-cr-30070, Doc. 158).

The jury convicted petitioner of all eight counts, and the Court sentenced him to life terms for three counts and 360 months' imprisonment for the remaining five counts, all to run concurrently (06-cr-30070, Doc. 191). Petitioner directly appealed his convictions, arguing the Court erred in denying him a *Franks* hearing and in its handling of Juror No. 1's misconduct. *See Smith*, 576 F.3d at 763.

Specifically, petitioner argued the Court erred in denying him a *Franks* hearing, as the acknowledged factual errors of the search warrants reflected a reckless disregard for the truth that rendered the warrants invalid. The Seventh Circuit denied petitioner's contention, finding the Court's credibility assessment of Dunn; namely, its conclusion that he did not act with reckless disregard for the truth, was not clear error. Further, the court stated, "[e]ven without the misstatements or, as [petitioner] would have it, falsehoods, the information in the affidavits was enough to establish probable cause." Thus, it held the Court was not compelled to give petitioner a *Franks* hearing. *Id.* at 765.

Additionally, petitioner argued the Court should not have conducted a meeting off the record and that it should have done more to investigate and remedy any prejudicial effect of Juror No. 1's statement. The Seventh Circuit disagreed, holding the Court did not abuse its discretion in its handling of Juror No. 1's misconduct. Accordingly, petitioner was not entitled to a new trial, and the Court's judgment was affirmed. *Id.*

Instantly, petitioner's Section 2255 petition raises seven separate claims for relief. The Court shall address petitioner's claims in turn. However, as petitioner's contentions raise arguments either addressed on direct appeal or lacking in merit, petitioner's motion is **DENIED**.

### III. Petitioner's Section 2255 Petition is Denied

#### a. Law

A prisoner may move to vacate, set aside or correct his sentence if he claims "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

Section 2255 is an extraordinary remedy because it asks the district court "to reopen the criminal process to a person who has already had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, relief under Section 2255 is "reserved for extraordinary situations," *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)), as a collateral attack pursuant to § 2255 is not a substitute for a direct appeal. *Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007).

Unless a movant demonstrates changed circumstances in fact or law, a movant may not raise issues already decided on direct appeal. *Olmstead v. United States,* 55 F.3d 316, 319 (7th Cir. 1995). Further, generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States,* 538 U.S. 500, 504 (2003); *accord Levine v. United States,* 430 F.2d 641, 642–43 (7th Cir. 1970); *see also Belford v. United States,* 975 F.2d 310, 313 (7th Cir. 1992),

*overruled on other grounds by Castellanos v. United States*, 26 F.3d 717, 719–20 (7th Cir. 1994) (nonconstitutional issues that could have been raised on appeal but were not are procedurally defaulted).

However, a court may consider constitutional issues that were not raised on appeal if the petitioner can demonstrate either (1) good cause for not raising them on appeal and actual prejudice from not raising them, or (2) that the district court's refusal to consider them would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

Petitioner's various grounds for relief include numerous allegations of ineffective assistance of counsel. Relevantly, "the usual procedural default rule," does not apply to such claims as, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005) (citing *Massaro*, 538 U.S. at 504); *see also Richardson v. United States*, 379 F.3d 485, 487 (7th Cir. 2004).

To succeed in an ineffective assistance of counsel claim, a petitioner must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To satisfy the first prong, "the Court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. To satisfy the

second prong, petitioner must demonstrate to a "reasonable probability" that without the unprofessional errors, "the result of the proceeding would have been different." *Porter v. Gramley*, 122 F.3d 351, 353 (7th Cir. 1997) (citation omitted). A district court's analysis begins with a "strong presumption that the defendant's attorney rendered adequate representation of his client." *United States v. Meyer*, 234 F.3d 319, 325 (7th Cir. 2000). Thus, petitioner must overcome a heavy burden to prove that his attorney was constitutionally deficient. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006).

### b. Application

#### i. Ground One: Violation of Fourth Amendment as it Relates to Unconstitutional Search and Seizure

Petitioner's first claim is couched as a Fourth Amendment violation. Petitioner alleges that false, sworn testimony formed the basis of the probable cause upon which the search warrants of 1837 Arkansas Avenue were based. As explained above, this issue was raised and rejected on direct appeal. Petitioner has not offered a change in the relevant law or circumstances since 2009. Accordingly, petitioner's first claim does not provide him his requested relief. *See Olmstead,* 55 F.3d at 319.

#### ii. Ground Two: Violation of Fifth and Fourteenth Amendments as it Relates to Due Process Violations of Law

Petitioner's next contention, brought as a Fifth and Fourteenth Amendment violation, again claims prejudice as the Court denied his request for a *Franks* hearing. Although petitioner brings his claim under different constitutional

amendments, his argument mirrors that of his first claim. As the Seventh Circuit held the Court was not compelled to give petitioner a *Franks* hearing, petitioner again brings a claim decided on direct appeal that must instantly be denied. *See id.*

### iii. Ground Three: Eighth Amendment Violation

Petitioner's third ground for relief alleges that the government unfairly increased his punishment, as a prior conviction was held against him. Regarding petitioner's claim, on October 19, 2006, the government filed a notice of its intent to seek enhanced sentence pursuant to 21 U.S.C. § 851. (06-cr-30070, Doc. 56). On October 21, 1997, in the Circuit Court of St. Clair County, Illinois, petitioner pled guilty to unlawful possession of a controlled substance (cocaine), a Class 4 felony in violation of 720 ILCS 402-c. Petitioner received probation. While he was ultimately successfully discharged from that probation, the government correctly noted that he was still subject to enhancement based upon it. *See United States v. McAllister,* 29 F.3d 1180, 1184-85 (7th Cir. 1994) (holding that despite Illinois law which discharges a defendant upon successful completion of probation, that probation "constitutes a prior conviction under § 841(b)(1)(B)").

Notably, petitioner did not object to the government's notice of its intent to seek enhanced sentence at the time of its filing. Instantly, petitioner raises this claim as warranting his requested relief. However, as petitioner did not raise this non-constitutional claim on direct appeal, it is procedurally defaulted. *See*

*Massaro,* 538 U.S. at 504. Regardless, petitioner's argument is meritless as *McAllister* is still controlling law in the Seventh Circuit.

Petitioner further argues ineffective assistance of counsel for his trial counsel's failure to object to the enhancement. It is well-settled that, "the right to counsel does not include the right to compel counsel to raise frivolous arguments." *United States v. Baker,* 88 Fed. App'x. 96, 100 (7th Cir. 2004) (citing *United States v. Boyd,* 86 F.3d 719, 723 (7th Cir. 1996) (explaining that while some decisions are the defendant's, the majority of strategic decisions are counsel's to make)). Again, *McAllister* remains controlling law in this circuit. Accordingly, petitioner's counsel was not ineffective for failing to object to enhancement. Thus, petitioner's claim lacks merit and must fail.

> iv. **Ground Four: Ineffective Assistance of Counsel for Failing to Request Court Reporter's Presence During In-Chambers' Meeting**

Petitioner's fourth claim alleges ineffective assistance of counsel for his trial counsel's failure to request a court reporter's presence during in-chambers' meetings. Petitioner specifically refers to two communications which took place with Juror No. 1, one which took place without the presence of petitioner's trial counsel. Petitioner is referring to the Court's discussions with Juror No. 1 concerning his statement to an unidentified juror that the testimony was "hitting close to home."

Thus, petitioner again brings a similar argument to one rejected on appeal. On appeal, he argued the district court erred in its handling of Juror No. 1's

misconduct in discussing the case with another juror. *See Smith*, 576 F.3d at 766. In addressing petitioner's argument, the Seventh Circuit noted, "[h]olding off-the-record meetings and later memorializing them on the record is not a recommended practice . . . It is difficult, however, to see the statement 'hitting close to home' as anything but innocuous." Thus, as the Seventh Circuit concluded the Court did not err in its handling of Juror No. 1's statement, the Court can decisively conclude petitioner's counsel likewise did not err.

Regarding *Strickland*, petitioner must establish his counsel's performance was ineffective and that he suffered prejudice as a result. *Strickland*, 466 U.S. at 694. In assessing counsel's effectiveness, courts look to the lawyer's work as a whole, as opposed to one alleged failing. *Knox v. United States,* 400 F.3d 519, 521 (7th Cir. 2005). Thus, even assuming *arguendo* petitioner's trial counsel erred in this instance, petitioner cannot demonstrate prejudice. As the Seventh Circuit noted, even assuming there was error in the handling of Juror No. 1's statements, such error would be harmless. "The evidence yielded in the two searches [was] extensive and quite damming of [petitioner], and the government had other evidence as well, including testimony from various co-conspirators." *Smith,* 576 F.3d at 766. Therefore, as petitioner not met his burden of establishing either prong of *Strickland*, his claim is denied.

### v. Ground Five: It was Never Proven That a Conspiracy Existed, and That Petitioner Participated in the Alleged Conspiracy

Petitioner's fifth claim alleges, "[t]he only evidence vaguely connecting [petitioner] to an alleged conspiracy is the testimony of individuals who were the targets of the conspiracy and were arrested for selling drugs to informants and undercover agents." As petitioner alleges these individuals "had a bad character for truthfulness," he states, "the essential elements of the alleged crimes w[]ere not proven beyond a reasonable doubt." Thus, he challenges the sufficiency of the evidence upon which the jury found he, "knowingly embraced the criminal objectives."

Importantly, petitioner did not raise a sufficiency of the evidence claim on direct appeal. Accordingly, he has procedurally defaulted such claim. *See Massaro,* 538 U.S. at 504. Moreover, challenges to the weight and sufficiency of evidence are not cognizable on a motion under Section 2255. *United States v. Washington,* 287 F.2d 819 (7th Cir. 1961) ("[I]t is well established that questions as to the sufficiency of the evidence must be raised by appeal from the judgment of conviction and not by a petition under section 2255.").

Regardless, even if petitioner's challenge was properly before the Court, he would face a "formidable hurdle." *See United States v. Dennis,* 115 F.3d 524, 534 (7th Cir. 1997). When addressing a challenge to the sufficiency of the evidence, the court construes the record "in the light most favorable to the prosecution, making all reasonable inferences in its favor, and affirm the

conviction so long as any rational trier of fact could have found the defendant to have committed the essential elements of the crime." *United States v. Kindle*, --- F.3d ----, 2012 WL 4372519 *3 (7th Cir. Sept. 26, 2012) (citing *United States v. Mota*, 685 F.3d 644, 649-50 (7th Cir. 2012) (quoting *United States v. Vallar*, 635 F.3d 271, 286 (7th Cir. 2011))).

In this instance, to establish the conspiracy, the government had to prove: (1) the existence of an agreement between two or more persons to possess with intent to distribute cocaine; (2) that the defendant knew of the agreement; and (3) that the defendant intended to join the agreement. *Id.* (citing *United States v. Spagnola*, 632 F.3d 981, 986 (7th Cir. 2011)). At trial, Edith Fletcher testified that she sold drugs for petitioner. Tr. Vol. 2, p. 14. Further, Dawn Green testified that she and Virgil Green purchased drugs from petitioner to give to other customers. Tr. Vol. 2, p. 131. Moreover, Virgil Green confirmed that he sold drugs petitioner supplied. Tr. Vol. 2, p. 180. Additionally, Cora Williams testified that she lived in petitioner's trailer and sold drugs for him. Tr. Vol. 3, p. 14. Thus, as the Seventh Circuit has previously noted, the evidence of petitioner's guilt was "extensive and quite damning." *Smith,* 576 F.3d at 766. Accordingly, petitioner's claim is both non-cognizable and utterly lacking in merit.

### vi. Ground Six: Ineffective Assistance of Counsel for Failure to Take Depositions and Impeach Witnesses

Petitioner's sixth claim alleges ineffective assistance of counsel for various tactical decisions of his trial counsel. Specifically, petitioner cites his trial counsel's failure to take witness depositions and call or impeach certain

prosecution witnesses.[2] Importantly, FEDERAL RULE OF CRIMINAL PROCEDURE 15 states that neither party has an automatic right to a deposition. Fed. R. Crim. P. 15(a)(1). The court may only allow depositions in exceptional circumstances or in the interests of justice. *Id.* Although petitioner now states his counsel was ineffective for failing to depose certain witnesses, he does not state exceptional circumstances warranting such depositions. Petitioner states depositions would have enabled his counsel to determine how helpful or damaging certain testimony would be. Thus, as petitioner's belief that depositions would be helpful do not rise to standard required under Rule 15, the Court would undoubtedly have denied any motion for depositions petitioner's counsel would have filed. As an officer of the court, petitioner's counsel had a duty to act in good faith under the applicable rules and file motions only for non-frivolous reasons; not simply because his client believed certain motions would be helpful. Accordingly, petitioner has not demonstrated his counsel's failure to request depositions was "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690.

Further, petitioner alleges his trial counsel was ineffective for failing to impeach certain witnesses' testimony and failing to call Charlie Elliott as a witness, as Elliott's testimony would have impeached that of Cora Williams. Petitioner alleges Elliott would have testified that he did not buy drugs from petitioner based upon statements he made to law enforcement officers.

---

[2] Petitioner's supporting facts refer to video tapes he believes the jury may have viewed. He states that if the video tapes were given to the jury, his counsel was ineffective for not objecting to this. Petitioner presumably refers to the government's exhibit number 9, labeled "surveillance tapes sealed in one bag." Tr. Vol. 3, p. 3. These tapes were not admitted. Tr. Vol. 4, p. 154.

In arguing petitioner's trial counsel was ineffective for failing to call Elliott, petitioner overlooks Elliott's Fifth Amendment rights. Elliott was accused of purchasing cocaine from petitioner; a crime. Further, lying to agents, in addition to lying under oath, are both crimes. Counsel could have subpoenaed Elliott, but he could not have forced Elliott to testify. The decision of counsel to call or not call a witness is a tactical decision generally not subject to review. *United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir. 1997). Thus, as "[t]he Constitution does not oblige counsel to present each and every witness that is suggested to him," counsel's failure to call Elliott as a witness does not render his assistance ineffective. *Id.* (quoting *United States v. Bolzano,* 916 F.2d 1273, 1294 (1990)). Moreover, petitioner's trial counsel cross-examined Williams at length concerning her prior criminal record, Tr. Vol. 3, pp. 50-56, use of drugs, Tr. Vol. 3, p. 56-61, and cooperating plea agreement. Tr. Vol. 3, pp. 61-68.

Petitioner additionally claims his counsel was ineffective for failing to impeach Inspector Dunn, Virgil Green, and Bonny Crouch. As to Dunn, petitioner argues his counsel should have impeached Dunn's testimony concerning his allegedly inconsistent statements that "marked money" was not used during the controlled buys, but that "marked money" was found on Williams. During Dunn's direct examination he stated "Official Advanced Funds" were used. Tr. Vol. 3, p. 163. Dunn does not mention "marked money." Thus, petitioner's trial counsel was not ineffective for failing to cross examine Dunn concerning an alleged discrepancy in his testimony that did not in fact take place.

Further, petitioner alleges his trial counsel was ineffective for failing to impeach Virgil Green for his dishonesty. However, during petitioner's counsel's cross-examination of Virgil Green he examined Virgil Green's prior criminal record, Tr. Vol. 2, pp. 198-205, prior drug use, Tr. Vol. 2, pp. 202-205, and his threat to the confidential informant, Tr. Vol. 2, pp. 205-207. Thus, petitioner's trial counsel acted as petitioner now requests.

Concerning Bonnie Crouch, petitioner contends his counsel could have impeached Crouch for dishonesty, as she wrote bad checks on "Roger's checking account." During petitioner's cross-examination of Crouch, he questioned her concerning her various charges for writing bad checks. Tr. Vol. 4, pp. 49-51. Thus, although his counsel did not question Crouch specifically concerning "Roger's checking account," he clearly cross-examined her concerning her history of writing bad checks.

Additionally, petitioner contends his counsel should have impeached Williams for dishonesty regarding the "marked money" she stated she gave back to the agents without being asked. Presumably, petitioner is referring to the fact that Williams initially kept $100.00 of the buy money after informing the agents that she had given all of the money to petitioner. During petitioner's counsel's cross-examination of Williams, he questioned her concerning the $100.00 she initially kept in her pocket. Tr. Vol. 3, p. 69.

Finally, petitioner contends that his trial counsel was ineffective for failing to "aggressively" attack the prior inconsistent statements of Roger Ennen.

However, petitioner's trial counsel began his cross-examination of Ennen with his signed, inconsistent statement denying illegal dealings with petitioner. Tr. Vol. 4, pp. 69-71. He then continued his cross-examination with two verbal, inconsistent statements. Tr. Vol. 4, pp. 71-74. Counsel further called attention to the fact that between the first and last statement, Ennen was charged with a crime, the resolution of which was still pending. Tr. Vol. 4, pp. 71-74. On re-cross, trial counsel again pointed out that Ennen failed to tell the authorities something he now claimed was true. Tr. Vol. 4, p. 75. Lastly, in closing argument, trial counsel again stressed Ennen's two prior inconsistent, verbal statements. Tr. Vol. 5, pp. 67-69.

Thus, none of petitioner's claims demonstrate his trial counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 694. Petitioner's instant allegations either amount to tactical decisions that were within counsel's discretion to make, or represent entirely meritless arguments. Specifically concerning petitioner's challenges to his trial counsel's impeachment of certain witnesses, his counsel did everything petitioner instantly suggests. Thus, petitioner's arguments are utterly without merit and must fail.

### vii. Ground Seven: Evidence of a Tainted Jury and Jury Misconduct Warrant Mistrial

Petitioner's final claim again cites Juror No. 1's misconduct as a basis for relief. Once again, petitioner argues the Court's handling of Juror No. 1's misconduct was improper, as "the extent of tainting was never properly probed." Petitioner further "contends that the Trial Court acted preciptately[sic], erred in

denying and not getting to the bottom of the jury misconduct, and fail[ing] to solicit the parties['] (including [petitioner's]) view on the necessity of a mistrial."

Concerning whether the Court acted precipitously in ending its inquiry into whether Juror No. 1's statement tainted the other jurors, the Seventh Circuit found,

> It is difficult . . . to see the statement "hitting close to home" as anything but innocuous, and [petitioner] has failed to demonstrate how Juror No. 1's self-diagnosed lack of impartiality (which he dutifully brought to the attention of the court) could be transmitted through such a neutral statement. In addition, the district court may have had good reason not to investigate further, as "quizzing a juror, or perhaps all the jurors, in the middle of a trial is likely to unsettle the jury." Thus, we find no abuse of discretion in the district court's handling of Juror No. 1's statement.

*Smith*, 576 F.3d at 766 (quoting *United States v. Stafford*, 136 F.3d 1109, 1113 (7th Cir. 1998)). To reiterate, the Seventh Circuit has explained, "the 'law of the case' doctrine dictates that 'once this court has decided the merits of a ground of appeal, that decision establishes the law of the case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it.'" *Fuller*, 398 F.3d at 648 (quoting *United States v. Mazak*, 789 F.2d 580, 581 (7th Cir. 1986)); *Varela*, 481 F.3d at 935-36 ("Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances."). Petitioner has not offered changed circumstances which warrant re-litigation of his instant contention. Thus, this alleged grievance does not provide petitioner relief.

Finally, as to petitioner's claim that the Court failed to solicit his opinion as to whether a mistrial was warranted on the basis of Juror No. 1's conduct, petitioner's trial counsel moved for a new trial (06-cr-30070, Doc. 156). In the motion, petitioner's trial counsel argued, "[t]he Court should have declared a mistrial when it could not ascertain the identification of the juror whom Juror A . . . spoke with and stating this testimony was hitting close to home." Thus, petitioner's trial counsel did in fact argue a new trial was warranted on petitioner's behalf. The Seventh Circuit held petitioner was not entitled to a new trial. Again, issues raised on direct appeal cannot be reconsidered on a Section 2255 motion absent changed circumstances. *Varela*, 481 F.3d at 935-36. As petitioner does not offer the requisite changed circumstances, his final claim must also fail.

### IV.     Certificate of Appealability Denied

Under Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Thus, the Court must determine whether petitioner's claims warrant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability have been granted. *See Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A *habeas* petitioner is entitled to a certificate

of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). Under this standard, petitioner must demonstrate that, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

As to petitioner's claims for relief, petitioner solely raises issues litigated on direct appeal, procedurally defaulted, or completely lacking in merit. Thus, reasonable jurists would not debate that the petition does not present a substantial showing of the denial of a constitutional right, nor would they encourage the claims to proceed further. Therefore, the Court **DENIES** petitioner a certificate of appealability.

## V.   Conclusion

For the reasons set forth above, petitioner's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence is **DENIED** (Doc. 1). Thus, petitioner's claims are **DISMISSED WITH PREJUDICE**. Further, the Court shall not issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 30th day of October, 2012.

Digitally signed by David R. Herndon
Date: 2012.10.30 16:04:00 -05'00'

**Chief Judge**
**United States District Court**